# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 218

State of North Dakota,                                            Plaintiff and Appellee

v.

Donna Jeanne Kenny,                                          Defendant and Appellant

No. 20190030

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable John W. Grinsteiner, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Justin J. Schwarz, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**State v. Kenny**

**No. 20190030**


**Crothers, Justice.**

[¶1] Donna Kenny appeals from a criminal judgment entered after a jury found her guilty of violating two disorderly conduct restraining orders. We conclude that N.D.C.C. § 12.1-31.2-01(5) does not violate her constitutional right to due process, N.D.C.C. § 12.1-31.2-01 is not unconstitutionally overbroad, and sufficient evidence exists to convict her of violating the disorderly conduct restraining orders. We affirm.


I

[¶2] On September 27, 2018, a district court referee entered two temporary disorderly conduct restraining orders against Kenny, which were sought by two of her neighbors. The neighbors live in the same five-unit condominium complex. A deputy sheriff served Kenny with the orders on the same day. The orders prohibited Kenny from having any physical contact with or coming within 100 feet of the two neighbors. A hearing on the temporary orders was scheduled for October 8, 2018.

[¶3] On September 28, 2018, Kenny approached the two neighbors at a backyard fire to ask who had parked in her spot in the common parking lot of the condominium complex. According to the neighbors, they advised Kenny she was not allowed to speak to them. Both neighbors testified that Kenny replied with either "shove it up your ass" or "stick it up your ass." The neighbors called the police, and Kenny was arrested for violating the restraining orders.

[¶4] On October 1, 2018, the State charged Kenny with two counts of violation of a disorderly conduct restraining order, both class A misdemeanors. In January 2019, a jury found her guilty of both counts.


II

[¶5]   Kenny argues that N.D.C.C. § 12.1-31.2-01(5), which provides for a disorderly conduct restraining order, violates the constitutional right to due process.

[¶6]   "The constitutionality of a statute is a question of law, and we uphold the statute unless its challenger can demonstrate the statute's unconstitutionality." *State v. Norman*, 2003 ND 66, ¶ 21, 660 N.W.2d 549. Under N.D.C.C. § 12.1-31.2-01, the district court "has discretion to grant a disorderly conduct restraining order and to conduct a hearing on a petition for an order." *Gonzalez v. Witzke*, 2012 ND 60, ¶ 8, 813 N.W.2d 592. This statute "creates a special summary proceeding and directs a hearing upon order of the district court." *Skadberg v. Skadberg*, 2002 ND 97, ¶ 13, 644 N.W.2d 873.

[¶7]   At the time of the orders in this case, N.D.C.C. § 12.1-31.2-01 provided, in relevant part:

> "1.   'Disorderly conduct' means intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person. . . . Disorderly conduct does not include constitutionally protected activity.
>          . . . .
> 4.   If the petition for relief alleges reasonable grounds to believe that an individual has engaged in disorderly conduct, the court, pending a full hearing, may grant a temporary disorderly conduct restraining order ordering the individual to cease or avoid the disorderly conduct or to have no contact with the person requesting the order. A temporary restraining order may be entered only against the individual named in the petition. The court may issue the temporary restraining order without giving notice to the respondent. Unless otherwise terminated by the court, the temporary restraining order is in effect until a restraining order issued under subsection 5 is served.
> 5.   The court may grant a disorderly conduct restraining order ordering the respondent to cease or avoid the disorderly conduct or to have no contact with the applicant if:
>          a.   A person files a petition under subsection 3;
>          b.   The sheriff serves the respondent with a copy of the temporary restraining order issued under subsection 4 and with notice of the time and place of the hearing;
>          c.   The court sets a hearing for not later than fourteen days after issuance of the temporary restraining order unless the time period is extended upon written consent of the parties, or

2

upon a showing that the respondent has not been served with a copy of the temporary restraining order despite the exercise of due diligence; and

   d. The court finds after the hearing that there are reasonable grounds to believe that the respondent has engaged in disorderly conduct. If a person claims to have been engaged in a constitutionally protected activity, the court shall determine the validity of the claim as a matter of law and, if found valid, shall exclude evidence of the activity.

   . . . .

   8. If the respondent knows of an order issued under subsection 4 or 5, violation of the order is a class A misdemeanor. If the existence of an order issued under subsection 3 or 4 can be verified by a peace officer, the officer, without a warrant, may arrest and take into custody an individual whom the peace officer has probable cause to believe has violated the order.

   . . . ."

(Emphasis added.)

[¶8] Kenny argues that "both" N.D.C.C. § 12.1-31.2-01(4) and (5) allow for a disorderly conduct restraining order to be issued without first holding any type of hearing, in violation of her constitutional right to due process, and that the statute is unconstitutional on its face and as applied to her.

[¶9] This Court has said "restraining orders are a species of injunction, distinguished basically by their temporary nature." *Svedberg v. Stamness*, 525 N.W.2d 678, 681 (N.D. 1994) (citing *Gunsch v. Gunsch*, 69 N.W.2d 739, 749 (N.D. 1954)). We further explained:

"Generally injunctions have 'no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes.' 43A C.J.S. *Injunctions* § 158. This is because, ordinarily, criminal sanctions provide the remedy for such violations. In this situation, however, the legislature has empowered the court to restrain criminal conduct upon a showing that reasonable grounds exist that tend to show disorderly conduct was committed. NDCC § 12.1-31.2-01.

"An 'injunction against acts in violation of law is proper where there is express statutory authority therefor.' 43A C.J.S *Injunctions* § 158. When such authority exists, '[i]njunctive relief under such statutes is not conditioned upon common law requirements but solely upon the terms of the statute.' *Id.* The statutory authority to enjoin these

criminal acts provides the sole basis for the trial court's actions in this case."

*Svedberg*, 525 N.W.2d at 681. "[A] temporary restraining order, *which may be issued ex parte without a hearing*, is a species of injunction, typically brief in duration, that has as its purpose maintaining the status quo until a determination can be made on the temporary injunction issue." *State v. Holecek*, 545 N.W.2d 800, 804 (N.D. 1996) (emphasis added) (citing *Amerada Hess Corp. v. Furlong Oil & Minerals*, 336 N.W.2d 129, 132 (N.D. 1983); 42 Am. Jur.2d *Injunctions* 10 (1969)). "[O]rdinarily, a temporary restraining order precedes a temporary or preliminary injunction, which in turn precedes a permanent injunction if, after a hearing on the merits, a permanent order is found to be necessary." *Holecek*, at 804.

[¶10]   Under N.D.C.C. § 12.1-31.2-01(4), the district court may issue a temporary disorderly conduct restraining order based on the allegations in the petition, if the petition alleges reasonable grounds to believe an individual has engaged in disorderly conduct, "ordering the individual to cease or avoid the disorderly conduct or to have no contact with the person requesting the order." The court must then hold a full hearing "not later than fourteen days" after issuing the temporary order, unless otherwise agreed to by the parties, before granting a long-term disorderly conduct restraining order, not to exceed a period of two years. N.D.C.C. § 12.1-31.2-01(5), (6). *See Meier v. Said*, 2007 ND 18, ¶ 14, 726 N.W.2d 852. Under the statute's plain language, while the temporary order may be entered without a hearing, the court must hold a hearing before entering a long-term order. Section 12.1-31.2-01(5)(b), N.D.C.C., requiring the respondent to be served with the temporary order, is one of the elements the State must establish before a long-term order is issued. Moreover, under N.D.C.C. § 12.1-31.2-01(8), the respondent must know of a temporary order issued under N.D.C.C. § 12.1-31.2-01(4) or (5) before the respondent can be found to have violated the order.

[¶11]   In this case, Kenny was charged with violating the temporary orders issued under N.D.C.C. § 12.1-31.2-01(4), before the hearing on the temporary orders could be held under N.D.C.C. § 12.1-31.2-01(5). She was ultimately convicted of violating

4

the temporary orders. On this record, Kenny's constitutional argument that N.D.C.C. § 12.1-31.2-01(5) violates her constitutional right to due process is without merit.

## III

[¶12] Kenny argues N.D.C.C. § 12.1-31.2-01 was "constitutionally overbroad as applied to her."

[¶13] In *State v. Francis*, 2016 ND 154, ¶ 16, 882 N.W.2d 270, we discussed the overbreadth doctrine:

> "'The doctrine of overbreadth prohibits the law from criminalizing constitutionally protected activity. A governmental purpose to control or prevent activities constitutionally subject to state regulations may not be achieved by means which sweep unnecessarily broad and thereby invade the area of protected freedoms.' *City of Fargo v. Salsman*, 2009 ND 15, ¶ 25, 760 N.W.2d 123 (citations omitted). 'The overbreadth doctrine permits an individual whose own speech or conduct may be prohibited . . . to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so.' *McCrothers Corp. v. City of Mandan*, 2007 ND 28, ¶ 27, 728 N.W.2d 124 (alteration in original) (quoting *SOB, Inc. v. Cnty. of Benton*, 317 F.3d 856, 864 (8th Cir. 2003))."

[¶14] Kenny asserts the district court's two temporary orders were merely preprinted, fill-in-the-blank forms. Under the temporary orders, Kenny was required to remain 100 feet away from the neighbors, including their residences, and to have no physical contact with them. Kenny asserts that all of their homes were within 100 feet of each other, in addition to their garage and common parking lot. Kenny claims she could not comply with the orders unless she moved out of her home, and the arresting officer could have used discretion to determine if this was constitutionally protected activity. She asserts the "very nature of N.D.C.C. § 12.1-31.2-01, through the use of restraining orders to dispossess [Kenny] from her home, makes constitutionally protected activity illegal."

[¶15] The State responds that the proper place to argue the constitutionality of the statute and the orders was in the civil cases, not during the criminal proceeding. The

5

State also contends Kenny failed to raise to the trial court whether it was unconstitutional as applied to the facts of her case.

[¶16] Here, Kenny is attempting on appeal to collaterally attack the issuance of temporary disorderly conduct restraining orders. However, while she contends the temporary orders dispossessed her from her home, the district court specifically rejected this argument. At trial, Kenny's counsel moved to dismiss the charges based on insufficient evidence, and the court denied the motion under N.D.R.Crim.P. 29. Her counsel then argued, "I believe that the Article XIV, Subsection 1 of the United States Constitution says that you can't deprive any person of life, liberty or property without the due process of law. There was no due process. Therefore, I think there should be an instruction to the effect that—a question basically whether or not the defendant in this case was deprived of her real property without the due process of law. . . ." The State objected, and the court sustained the objection, stating:

> "Stop. The Court finds that argument improper. The reason is, is there is no allegation being sought today that we're in violation of the being in the property. [sic] The allegations are that we approached the parties and violated the order in that fashion. So I really don't find that relevant. I'm going to deny that, so I will not make that change to the instructions."

[¶17] Although her trial counsel attempted to argue the temporary restraining orders dispossessed or deprived Kenny of her real property, Kenny was not charged or convicted for being in her home. Rather, she was charged and convicted for her conduct in approaching and speaking to the neighbors after the temporary orders were issued. Kenny had been served with the temporary orders, the district court had jurisdiction to enter the orders, and the orders were not void on their face.

[¶18] Under these facts and circumstances, N.D.C.C. § 12.1-31.2-01 is not unconstitutionally overbroad or unconstitutional as applied to her.

IV

[¶19] Kenny argues insufficient evidence supports her conviction for violating the disorderly conduct restraining orders.

6

[¶20] Our standard of review is well established when a defendant challenges the sufficiency of the evidence to support a jury verdict:

> "In reviewing the sufficiency of the evidence to convict, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction. A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor."

*State v. Rourke*, 2017 ND 102, ¶ 6, 893 N.W.2d 176 (quoting *State v. Knowels*, 2003 ND 180, ¶ 6, 671 N.W.2d 816). "A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Rourke*, at ¶ 6 (quoting *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819). "A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts." *Id.* "[A] jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict." *Id.*

[¶21] Kenny argues she did not violate the remaining constitutionally valid restrictions in the orders because both elements three and six of the jury instructions were not met. Each count's separate element three required the State to prove Kenny "came into contact and/or came within 100 feet of [the neighbors]," and element six requires the State to prove that: "contact by the Defendant with [the neighbors], was contrary to the terms of the Restraining Order." Kenny contends that because the 100 foot restriction was illegal and unenforceable, she could not have been convicted of violating it.

[¶22] Kenny further contends the State alleged she violated the orders by having contact with the neighbors, but the actual temporary restraining orders only restricted "physical contact." She asserts she had no physical contact with her neighbors. She therefore contends the required "contact" in element six is contrary to the restraining orders' terms which required "physical contact." She argues her statement in

7

response to her neighbors telling her she could not speak to them or be within 100 feet of them, was constitutionally protected free speech and not prohibited by the restraining orders.

[¶23] Here, the neighbors testified at trial about the incident that occurred the day after the temporary orders were issued, when Kenny approached them and twice initiated contact in violation of the orders. Both testified Kenny was within 100 feet of them. Testimony from the deputy and the officer indicated the orders were served on Kenny on September 27, 2018, and Kenny admitted she had been served. Further, Kenny's own testimony corroborates the events that took place the evening of September 28, 2018.

[¶24] While the temporary orders precluded "physical contact," the jury instructions only require that the defendant come "into contact" with the victims. The jury instructions were not objected to on this ground. *See State v. Johnson*, 2001 ND 184, ¶ 10, 636 N.W.2d 391 ("Although the trial court is initially responsible for correctly instructing the jury on the law of the case, both the prosecution and the defense have the responsibility to request and object to specific instructions."). "[T]o preserve the issue for appellate review under N.D.R.Crim.P. 30(c), a party must specifically object to the instruction at trial and distinctly state the ground for objection." *State v. Weaver*, 2002 ND 4, ¶ 16, 638 N.W.2d 30; *see also State v. Friesz*, 2017 ND 177, ¶ 37, 898 N.W.2d 688 ("Unchallenged jury instructions become the law of the case.").

[¶25] In this case, the jury instructions using differing language than the temporary disorderly conduct restraining orders were the law of the case. On this record, a rational fact finder could find Kenny guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the State and giving the State the benefit of all inferences reasonably drawn in its favor. Therefore, sufficient evidence supports the jury's verdict convicting Kenny of violating the disorderly conduct restraining orders.

V

8

[¶26]   The criminal judgment is affirmed.

[¶27]   Daniel J. Crothers
        Jerod E. Tufte
        Jon J. Jensen
        Lisa Fair McEvers
        Gerald W. VandeWalle, C.J.

9